As each of you do come up to the podium, I would invite you to take a second and just, you know, where the switch is, that's right on the right, please feel free to move the podium up or down as is most comfortable, and tilt the microphones exactly as counsel has done, so that we don't miss a word of what are sure to be gripping arguments, so. Attorney Shapiro, you may begin. Thank you, Your Honor. May it please the Court, my name is Alexandra Shapiro and I represent Appellant Neal Cole. The government here did exactly what the Supreme Court has repeatedly held in the Seal Fond case and its progeny is forbidden by the Double Jeopardy Clause. As the Court said in Ash v. Swenson, following the acquittal, the prosecutors treated the first trial as no more than a dry run for the second prosecution. No doubt they thought they had a provable case on the charge, and when they lost, they did what every good attorney would do, refine their presentation in light of the turn of events at the first trial, but this is precisely what the constitutional guarantee forbids, and that's exactly what happened here. The government tried its case and lost, went back and figured out what went wrong, how they could improve, and came back with a new, better presentation and got their conviction. The only rational conclusion analyzing the record of the first trial in a practical frame as required by the controlling law is that the first trial necessarily decided the same issue re-litigated in the second one. The central issue at both trials was the same, it was whether there were secret side agreements orchestrated by Neal Cole to inflate Iconix's revenues. Indeed, in the district court, in the litigation about the collateral estoppel issue, the government conceded, quote, the very essence of its theory was that the substantive charge involved the defendant working with others as part of a scheme to fraudulently inflate its revenues and in the process lie to the SEC and interfere with audits. That's in Appendix 503. The government likewise argued that, quote, the core of its theory, unquote, was that Neal, quote, agreed with others to commit the scheme. That's in Appendix 632. And the dispositive factor at the first trial was whether the jury believed the cooperator Horowitz or whether it believed Neal Cole, the defendant. And clearly, the verdict demonstrates that the jury at the first trial didn't believe Horowitz and did credit Cole. Counsel, could you address what I think the government's going to argue based on their brief? This idea that because it was a multiple object conspiracy and the district court instructed the jury they had to be unanimous as to the object, there's at least conceivably the possibility that, I don't know, the jury could have, I'm not sure, I'm going to let them articulate what their theory is there, but somehow I understand that that's, there's some possibility of how they would have broken down. You don't know exactly what they agreed on. Sure. Sure, Your Honor, I'll address that. The reason that's wrong is that what the case law teaches is that we have to look at whether a rational jury could have done that. And that would have been entirely irrational because this is very different from, for instance, a case, let's take as an example, a drug case with multiple objects, you know, distribution of heroin, distribution of cocaine, there's different evidence on each. This case, the central issue was the first object. It was an alleged scheme to commit securities fraud by inflating Iconix's revenues through these alleged secret side agreements. The other two objects, false filings with the SEC, lying to auditors, were simply means of carrying out that same scheme. You know, and that's the way the government argued the case. If you look at the summation in the first trial, as well as the second, but the one in the first trial is obviously what's critical, you see that the government barely even mentioned the other two objects, and when it did, it was at the end as kind of an afterthought. But it was clear that, you know, you basically can't commit the other two objects unless you've committed the securities fraud in the first place because there was nothing illegal about such agreements had they existed on their own. The only thing that would have made them illegal would have been that there was a binding commitment and therefore the revenues were being inflated, and if the revenues weren't being inflated, the SEC filings wouldn't be false and there'd be no purpose to lying to the auditors. So if that's correct, then you can't really separate out the objects that are identified as potential objects of the conspiracy, and there was room for confusion there about what the jury was supposed to do and what it actually did. Isn't it the case that what the jury necessarily decided, at least, was that there was no agreement to do those things? But that doesn't preclude other kind of criminal liability. There couldn't have been aiding and abetting or some kind of still intentional misleading of the auditors in the substantive accounts that then there was a conviction on. The minimal thing, it seemed to me, was that there was no agreement with one of those objects. So I don't see how that's necessarily in conflict with proceeding with the second trial as the government did. It is on the specific facts here, and we'll certainly concede that there are many types of cases where an acquittal on a conspiracy isn't going to bar a second trial on a substantive counts, but it has to do really with the nature of the facts as presented by the government in both trials, and especially, obviously, again, the first trial. But the government's theory here was not that this was a crime that either Mr. Cole could have committed alone or the other people could have committed alone. Their whole theory was that all of these people, and particularly, especially Horowitz and Cole, were, quote unquote, partners in crime. The government argued that Horowitz worked hand-in-glove with Cole and that Horowitz was in on the scheme. Horowitz testified that he conspired with Cole and had pled guilty to the exact same conspiracy count. So you're saying either it was a conspiracy as tried or there was no either intentionality or there's some other reason that they could acquit on the first count. Not on the facts of this case. On the facts of this case as presented by the government. This was the government's theory. The government did not argue an aiding and abetting theory, nor really the government's entire theory was that there was a conspiracy that they worked together and the facts that they elicited through Mr. Horowitz's testimony and the other evidence in the case were that this was essentially a partnership. They told the jury in the first trial that Cole, Rabin, Margolis, and Horowitz all worked together to inflate the joint venture prices so that Iconix's revenue would be inflated. Could you just clarify then, I think you said it, but I just want to make sure I understand it. Is it correct that Horowitz pled guilty to the same three object conspiracy? Yes, your honor. That was count one of his information to which he pled guilty. I don't have the page number.  The cooperation agreement is in evidence and he also obviously testified to pleading guilty. Again, I just want to make sure I'm understanding this part of your argument correctly. I guess with Silfon in all these cases, we're not in Blockburger world where we're just looking in the abstracted elements, but we're supposed to be looking at a practical matter about how the facts played out in a very detailed way and whether there's any logical space for a different result being reached by two different juries. My understanding is the idea is, well, Horowitz testified that he had this intent, this tripartite intent and he joined a conspiracy. If the jury thought that he, your client, did not join the conspiracy, was not guilty of the conspiracy, that means he must not have had that intent on his own because had he had that intent on his own, he would have shared it with Horowitz, I guess. I guess you could have a world where two people have the same intent to do the same bad thing, but it's not a shared intent. Two people working independently and in parallel to achieve the same evil thing, but is your view that if two people have the same evil intent that's identical, they are necessarily conspiring with each other or that, no, just given the facts of this case where Horowitz said not only did I intend to do it, but I shared this intent with Mr. Cole, that when the jury acquitted, they were necessarily saying, look, based on these facts, either he shared the intent with Horowitz or he didn't have it at all. Is that? It's definitely the latter, Your Honor. It's on the very specific facts of this case and that's what the collateral estoppel inquiry as opposed to the Blockburger inquiry is all about. And so, just to be super clear on this, if the court rules in our favor, you're not creating some kind of rule that defendants in other cases are going to run in every time some situation like this where there's a conspiracy acquittal in later. That's why you hypothesize the world where you have a tripartite object conspiracy to import, let's say, cocaine, heroin, and marijuana, but they all come on different planes and on different dates and the person is acquitted of that conspiracy. But you could still find that on one date, he planned to bring in the cocaine on a ship. On another date, he planned to bring the heroin in on a truck and so on. Depending on the facts, you could very well have a world where the government is estopped by virtue of the acquittal from retrying the conspiracy charge, but might very well be entitled to retry all of the hung substantive counts. It all just depends on the case and the facts. Exactly, Your Honor. And if I could just make, see, I've run out of time. Why don't we keep it real sharp because I think we're going to see you again. Yes, Your Honor. Let's give 30 seconds. Okay. I'll just make one last point on that. Obviously, the court has to look at the record of the first trial to make this initial determination. We think we win on that, but I also just want to point out that we also argue in the alternative that most of this evidence couldn't have come in. And what I was just going to point out is that I think if you look at the arguments in the second trial, you'll really see that the government's arguments at both trials are completely bound up in the conspiracy theory. Because the government in the second trial used phrases like, colon his crew. The inner circle talked about Horowitz and Margulis needing to play ball multiple times, talked about how they were enthusiastic participants in the scheme to inflate. Let's go with your question, if you don't mind. Well, please. Could you identify two specific pieces of evidence that you think should not have been admitted? We have the invoices, these blank for services rendered $3 million for services rendered $2 million, that are very puzzling on their face. Are those invoices documentary evidence that should have been precluded at the second trial by virtue of the first conspiracy acquittal? Well, I think at a minimum, the vast majority, if not all of Mr. Horowitz's testimony and a lot of Rabin and Margulis's testimony would have been inadmissible because to the extent the testimony was about this allegedly joint undertaking, it goes directly to the heart of what Mr. Cole was acquitted of doing. But I come back myself to the difference between an agreement and a possible aiding and abetting. Even if the government was presenting it as a scheme in which there was an agreement and looking at my colleagues thinking about parallel behavior that is free of an agreement but as a joint object. But again, that's not the way the government presented the case. And also I would just highlight that if you look at the aiding and abetting instruction, it essentially requires the same mens rea as the underlying crime. So in the context here where we're dealing with agreements themselves on the facts as being the key issue that determines whether there was a scheme at all, by definition we're talking about something that involves people agreeing. Well, but let me just take a step back there. Following up on Judge Carney's question about the aiding and abetting, it is conceptually different. You would agree aiding and abetting and conspiracy, right? I do, Your Honor. And just to be clear, it's true in general. Again, our argument is about the specific facts of this case and the way the government tried it in both trials. But let's talk about this, the way the government tried it. The thing that's always bothered me about that argument is it assumes that jurors are sheep. Jurors can listen to the defense and they can listen to the government and say these people have it all wrong. Their legal theory is wrong. I heard the instructions from the judge about how the law plays out, and we figured it out better than they have, right? They could acquit for a reason different from the one propounded by the defense. If the defense says, well, you should acquit because the cooperator is a lying liar who lies. And they say, no, no, no. They go back and they say, no, this guy is totally telling the truth, but I find, I don't know, some other case. There was no interstate commerce proved or something, some jurisdictional link. They are independent thinkers, and they're allowed to say, you know, I don't know these bozos from the government. I don't know what they were arguing, but that's nuts. There was no conspiracy here. This was clearly an aiding and abetting situation or something like that. So why is it that we focus on how the case was tried by a party as opposed to what could a rational jury have concluded from the testimony and facts presented to them? I understand that argument. I am not making that distinction, Your Honor. I think those things on the facts of this case are one and the same. Why are we even talking about how the government tried the case? Big deal. Well, when I say that, I mean not just what they argued but the evidence that they put in. Well, okay, so that's a little bit more of, I think, the useful focus here is, you know, assuming that the jury takes its oath seriously, and I assume we all presume that to be true, why is it that the facts here, forget about the theory that the government espoused during closing arguments, but why did the facts here not allow an inference of, I don't know what you want to say, parallel but not necessarily shared intents, mens rea. Well, I think you have to look at Mr. Horowitz's testimony, which was that he claimed he was directed by Mr. Cole to do these things. He repeatedly testified that he participated in them to get Iconix's revenues up. Also, he was the one who negotiated, was the principal negotiator for both of the two deals at issue. So it's just inconceivable that he was merely aiding and abetting. In addition to his guilty plea, the other sort of elephant in the room that I think makes this a very difficult, if not impossible, case for the government is that every indicia is that the jury simply rejected his testimony. You don't know what jurors think. I mean, they're black boxes. They could have thought that his hair looked funny and they could have been right. Well, Your Honor, with all due respect, and we didn't make a big deal out of this in our briefs, but I think it's worth pointing out, the other conspiracy of which Mr. Cole was acquitted was this claim that documents were destroyed, and the sole evidence for that came from Mr. Horowitz. We also have the district judge's own comment. He observed the entire trial that this was a contest of credibility between Mr. Cole and Mr. Horowitz. So those are all things that a practical analysis of the record demonstrates. There is just no other rational way to come to the conclusion. This was not the type of scheme that a person could have committed on his own. Thank you. Well, we have your argument, and we will see you back again. So don't go away. Two more minutes coming your way. Why don't we hear from the government? And we have AUSA Rodriguez. Yes, good afternoon, Your Honors. Justin Rodriguez, and may it please the Court, I represent the United States on this appeal, as I did before the district court. Mr. Cole has not met his heavy, particularly onerous burden in this case, and I want to get right to Judge Nardini's question, which is how could the jury have split on the objects of the conspiracy in the way that the government is arguing, and here's how they could have done it. Some jurors, now this was not the government's argument, but as Judge Nardini pointed out, jurors don't have to take the government's presentation hook, line, and sinker. They can reach their own conclusions. But a rational jury in this case could have found that there was a difference between a conspiracy to willfully defraud Iconix's accountants and auditors, on the one hand, and a conspiracy to willfully defraud Iconix's investors, on the other hand. These are different harms, different victims, and the government presented different witnesses on this. But from a practical perspective, I have to say I have difficulty separating those out. How could you defraud the investors unless, you know, if the auditors, you know, didn't let the, or, you know, caught the use of the invoices? You couldn't get to the investors without the subsidiary actions. So, I mean, I don't see how those are really separate activities or goals. So here's how a rational jury could have done it, starting with the auditors. They heard testimony from the auditor himself, Mr. Larry Shapiro from BDO, and he testified that he previously instructed Mr. Cole about round-tripping and how it violated the applicable accounting rules. He and his team were laser-focused on how Iconix reported revenue and whether it violated ASC 606, which was the applicable accounting rule. Some jurors could have said, okay, and Mr. Cole knew that was what the testimony was. They could have said, okay, the Iconix co-conspirators agreed to willfully defraud the auditors because this is the kind of stuff auditors care about, right? These misrepresentations and accounting violations that flowed from the scheme, they were material. They are important to accountants and auditors because that's the kind of stuff they care about. Now, let's take investors. You mean they kind of took umbrage at being lectured at by the auditors but didn't really intend to hurt the investors, didn't really want to drive up the value of the company? So, again, I think there was a difference in the testimony, Your Honor, which is to say the two investor witnesses that testified, they were rigorously cross-examined about the information that was important to their investment decision. And they testified in the cross-examination was that there were many other factors beyond whether Iconix was complying with the applicable accounting rule. So, for example, they were testified about the importance of free cash flow rather than revenue. But the earning per share was going up. I mean, it was the year-over-year comparison and so on that was so important that the analysts relied on as well. How is that separate from defrauding the auditors? So, what it comes down to is whether the Iconix co-conspirators willfully agreed that this is who they would defraud and how. There was evidence that Mr. Cole met with one of the investors who testified at the trial, Mr. Noah Snyder, and that they talked about not how Iconix was recognizing revenue, but rather its long-term possibilities, its capital allocation. And so I think a rational jury, based on the evidence, could have found that there was a very meaningful difference between willfully defrauding the accountants based on what they're focused on and the investors. Again, that's not the government's theory. But I guess I'm a little confused as to why anyone would defraud their auditors just out of spite. I mean, I thought the point of defrauding the auditors is to get all the fake information to the investors, right? You don't want the auditors to reveal these fraudulent side agreements, right? I mean, is there some other motive to defraud the auditors that a rational jury could derive from this evidence? No, I think Your Honor is correct, which is to say, again, this is – the idea here was to get the auditors to allow them to recognize the revenue in their financial statements. Right, but why? So that they could include it in their financial statements. That's what I'm saying. Is there some other reason, besides having it flow to the investors, that Mr. Cole would putatively have a reason to trick and obstruct the auditors? It is to flow to the financial statements that go to the investors, but that is not sufficient a rational juror could have found to say that, okay, well, Mr. Cole willfully conspired with an intent to defraud the investors. No, no, no, but I guess I'm wondering – I understand that one of the arguments on the other side is, look, but he would have no point. There would be no reason on these facts to go after the auditors if not, as they say, as a means to get to the investors, to defraud the investors. And if he had no intent to defraud the investors, then it would make no sense on these facts for him to have tricked the auditors unless, you know, maybe there was evidence that he had hated the auditors from the time he was five years old and just always wanted to do the opposite of whatever they did or something. There's no personal grudge against one of these auditors that's in the evidence, is there? I'm not disagreeing with anything the Court's saying, and that's certainly – So why would they bother? Give us a factual theory here of why on this evidence a rational juror could have said, look, I bet he wanted to trick the auditors, but not the investors. Why not? And again, not with the investors because the investors can say this is – I don't know, the total mix of information is relevant to me. But in a conspiracy account, it's in what's in the head of the defendant, right? So if he thinks that this is the stuff that would be in the total mix of investment information that would be stuff that the investor would want to know, then that gets you enough for a conspiracy account, right? But I think if a rational juror concluded that Mr. Cole did not believe that this revenue, this additional revenue, was actually material to investors, he lacks criminal intent. That is not a – Criminal intent with respect to the conspiracy for the investors. Correct. But then that would raise the question of, well, why is he bothering to trick the auditors then? If he doesn't think that it's material to investors, then why would he even bother tricking the auditors? Because he had a different series of interactions with the auditors in which they expressed very clearly that it's important to them. They gave him instructions about round-tripping. They focused on ASC 606. There was no evidence that any of the investors cared so much about ASC 606 in the way of the auditor. And I know this is somewhat mixing intent and motive, but it does seem odd to suggest, because we are supposed to be looking at a factual – these factual scenarios here. Why would he have decided to do that? If you're saying some jurors might have concluded he wanted to defraud the accountants or the auditors but not the investors, why? To recognize it as revenue, Your Honor, because he generally wanted – But why would he want to recognize it as revenue if the answer isn't to trick the investors? I understand, Your Honor. So what is the answer? Why? Because he wanted to make his – to get past the auditors, to get his financial – No, no, no. That's the why would he want to get past the auditors question. That's what I'm asking. Why would he want this to go past the auditors if the answer isn't to trick the investors? So I think it – I appreciate the court's question now. I think it comes back to the mechanics of the actual deal, which is to say the overpayments for givebacks scheme, in order to get the deal done with GBG, there was this agreement of, okay, if you overpay, we will send the money back to you as a giveback. So it was just a consequence of how they were actually doing the scheme. Your Honor, I see that my time is – No, no. Keep going. Okay. So I did want to – Actually, yellow means keep going, by the way. Oh, okay. Yeah. So I believe that for the second trial court, you said that the very essence of your case was that the defendant was working with others as part of a scheme to defraud investors and lie to the SEC auditors and the auditors. So that, to me, suggested that you were once again making a conspiracy case, that you were, again, trying to prove that there was a scheme, people working together towards the same end, with or without – I mean, just this marginal difference. Maybe there was an agreement in exactly what the object was. It might have been a little bit different. But the second case feels an awful lot like the first, except that you got rid of the first transaction and focused on the second two. So what am I missing about that? I don't think – I think the only thing that you're missing, Your Honor, is that the law and this court's precedent makes clear that that is okay, which is to say the government is permitted to use the same evidence at the first trial and the second trial as long as it has satisfied the collateral estoppel case. That's this court's decision in Jackson, for example, where Judge Friendly remarked that the evidence at the second trial was virtually identical to the first trial and found no collateral estoppel. And he made the same distinction with respect to the Clark case. Again, there, the government presented virtually the same evidence at both trials. So that's still – and the way you framed it in the second trial, that you were basically trying them again for the same agreement and scheme, perpetrated in the same way with the same people, to include these false transactions, overstated transactions. And it just – you omitted the conspiracy charge, but all the actions were exactly the same. And the substantive counts that the jury – I mean, a mistrial was granted on that, but really it feels like they couldn't agree on those. It feels more like an acquittal on those counts. So I'm having trouble really relating the two in a way that satisfies my concerns about double jeopardy. So, Your Honor, Mr. Cole was fully afforded the protections of Blockberger, right? He was not retried on the conspiracy count. Yeah, but we've already established that the Supreme Court has created this additional test, which smells more like collateral estoppel. And Blockberger's not. We're not doing an elements test because this would be easy. I agree, Your Honor. So Blockberger's out the window for today. I agree, Your Honor. But I think it goes to, like, why the court should not be fundamentally concerned in the way that it feels like it's the same. Again, consistent with this court's precedent in Jackson and in Clark, Mr. Cole and the government the first time around, Mr. Cole was not acquitted of the substantive offenses. A unanimous jury did not reach a finding on the substantive offenses. The government and the public were entitled to have a jury reach a verdict on those substantive offenses. Well, that just begs the question of whether seal font governs here. I mean, maybe they were, maybe they weren't. That's the question we're supposed to decide. Is it the case that you'd like to retry the case with the same evidence, only arguing that Mr. Cole was aiding and abetting the people you previously described as conspirators? Because he seems to be the kingpin of the whole thing, according to the way you tried the case the first time. And that's what we should look at to determine what your case was and whether you should be permitted to retry it. I mean, any time you lose a conspiracy case, if you could just put on the same case again and call it aiding and abetting and forget the fact that the person who is the defendant we're talking about was depicted as the kingpin, it looks as though you're simply making a case for doing away with double jeopardy in this field. So, Your Honor, I respectfully disagree. Again, I think as Judge Nardini highlighted in the beginning, what governs here is not how the government presented its case. It is certainly true, as Your Honor pointed out, that that is how the government presented its case. Doesn't it matter how the government presented its case and how the defendant adjoined issue? That's what the case was about. I think what the case law teaches is that the court has to look at the evidence and the jury charge, not just what the party's theories were. But just to be clear, maybe the government's theory, maybe its closing argument, shouldn't hold that much weight. But what do you say to your opponent's argument that, well, it doesn't matter what evidence the government put in. So if we consider the government's case, we're not really saying, well, what was the closing argument because arguments aren't evidence. But it does matter that you put on Horowitz, who said we conspired. I conspired with him. How is it that on these facts it's different? Because I get that the word scheme does not equal conspiracy. Scheme is like a word device or an artifice to defraud. So in some ways, the scheme is the creation of these crazy side agreements that were designed to funnel money back. And that's, in a way, the scheme. And then you're going to have a distinct question about, okay, who was in on the scheme? And I guess what the question is, is had you tried the case the second time and put in evidence that said, well, no, this was – I don't know how you would do it. Here's another witness who says this was all Mr. Cole's idea and he kind of cooked this all up on his own. Here are other people who are sort of maybe unwitting participants and he used these minions to create all these contracts and maybe a different set of facts. But here, I mean, it was Horowitz again, right, who said I conspired with him. That's right. Mr. Horowitz testified at both trials, and Judge Ramos instructed the jury that they were free to accept as much or as little of Mr. Horowitz's testimony as they like. And it would be perfectly rational for a jury, especially given the cross-examination of Mr. Horowitz, to say Mr. Horowitz is a self-interested cooperator. We are not going to consider his testimony. We don't think it is of the caliber that rises to proof beyond a reasonable doubt. So a rational jury could have done what they did and put that aside and said we're just not going to consider Mr. Horowitz's testimony. If they did that, they're left with the testimony of Mr. Raven and Mr. Margolis, who did not work at Iconics, who did not have visibility into Iconics' dealings with its auditors or how it did its SEC file. That's correct. They just claimed any criminal intent on their own part. That's correct. So a rational jury could have looked at that and said if we put Mr. Horowitz aside because we don't want to put too much stock in the caliber of his evidence, Mr. Cole didn't conspire with anyone else because the GBG folks worked at GBG and they're just claiming criminal intent and they don't know how exactly Iconics did. But if you put Horowitz aside, how do you deal with the sufficiency of the evidence at that point? Well, so, Your Honor, there is no sufficiency of the evidence claim at this point. My point is that you're saying let us hypothesize a world in which the jury puts Horowitz to the side. So that is part of your hypothetical reconstruction of what a rational juror could have concluded. Well, I think when we're reconstructing the rational juror's possible conclusion, we need to reconstruct a world in which there's sufficient evidence, right? We're not imagining, well, maybe the jury didn't like the look on his face or the shape of his eyebrows. Maybe they put it right because that's not a rational juror thing.  So it has to be how would a rational juror have concluded there was sufficient evidence in a way that was not inconsistent with the first jury's acquittal on the conspiracy charge? So I think a rational juror in that circumstance would have been operating under the assumption that Mr. Cole was the only person with criminal intent. And that's why he's acquitted of the conspiracy. And they split on what the particular objects were on the substantive. And that's why they hung on the substantives. I think we have your argument. Thank you very much. Why don't we hear from Attorney Shapiro? And we'll try to be surgical about this. Two minutes. Yes, Your Honor. Very, very quickly. First of all, with regard to that last point, if the first jury put Horowitz to one side, then the government couldn't retry the case using his testimony in the second. So then we would win on that basis. And in addition, I would urge the court— I'm sorry, could you just say that again? So he's hypothesizing a completely imaginary world in which a jury could have rationally rejected Horowitz's testimony and still— and that would be the sole basis for the—and still thought that Mr. Cole committed the crime. And I'm saying that I don't think that's rational and it doesn't make sense. And I think picking up on Judge Nardini's questions, it's correct that the evidence would have been insufficient to find criminal intent on the part of Cole. And you can just take a look at the testimony of Rabin and Margolis summarized in our opening brief at pages 12 to 13, which will show you that their testimony could never have been sufficient in that ground. But what I was pointing out was that if for some reason the court were to conclude that we were wrong to say that the second trial was barred in its entirety, based on counsel's argument just now, at a minimum, Horowitz would not have been allowed to testify at the second trial. So we would still— You're saying our understanding would be that they disbelieved Horowitz. And if that's the case, that's what necessarily was the pivot point for their acquittal, then Horowitz shouldn't have been allowed to testify at the second trial. And I'll just—just one other quick point on the multiple objects. I think as the questioning revealed, the government's arguments doesn't make any rational sense because the only reason you would be trying to trick the auditors is in furtherance of the scheme about the investors. And lastly, I just want to point out that if the court doesn't accept the double jeopardy argument, we rest on the briefs. But we did make two alternative new trial arguments. Did the idea of aiding and abetting surface in the trial? And if so, how and where? It did not, Your Honor. The government never argued that. So the government assumes that the jury thought about aiding and abetting. Well, there was a jury instruction about it. Okay. But this is very different. And just picking up, I think, on Your Honor's questions to my adversary, I think it's a good contrast to cases like Jackson where the defendant who was acquitted of the conspiracy the first time was just a bit player in that case in a drug scheme where they had— Here the government's view was he was the kingpin. Exactly, Your Honor. Thank you. Thank you. Thank you both. Very well argued on both sides. We appreciate it. And we will take the case under advisement. Thank you all.